Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Andrea R. Gold (*pro hac vice* forthcoming)
*agold@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue, Northwest, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Adam A. Edwards (*pro hac vice* forthcoming)
William A. Ladnier (CA Bar No. 330334)
Amey Park (*pro hac vice* forthcoming)
Virginia Ann Whitener (*pro hac vice* forthcoming)
Jenna Santero (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
apark@milberg.com
gwhitener@milberg.com
jsantero@milberg.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOHN FORRETT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendant. | Case no.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff John Forrett ("Plaintiff"), on behalf of himself and a Class of those similarly situated, brings this action by the undersigned counsel against Defendant Samsung Electronics America, Inc. ("Defendant" or "Samsung"), based upon personal knowledge of the allegations pertaining to himself, and upon information, belief, and the investigation of counsel as to all other allegations.

## INTRODUCTION

1. Plaintiff brings this action individually and on behalf of a Class of similarly situated purchasers of certain Samsung televisions that Samsung advertised and sold as "Mini LED" televisions. This action arises from Samsung's false and deceptive advertising of its M-Series televisions—the M70H, M80H, and M90H models (the "M Models")—as "Mini LED" televisions. Although Samsung marketed the M Models as "Mini LED," they do not contain the defining technological feature of a Mini LED television: Full Array Local Dimming ("FALD"). In truth, the M Models are Samsung's pre-existing, entry-level Crystal UHD standard-LED televisions, repurposed and repackaged as "Mini LEDs" (the "Mini LED Deficiency").

2. A true Mini LED television uses hundreds to thousands of tiny LEDs—each roughly 100 to 300 microns, the size of a grain of sand—across the back panel of the television. Because those LEDs can be brightened or dimmed independently, individually or in zones, a true Mini LED television achieves substantially greater dynamic range, improved black and brightness levels, and better overall contrast. The improved ability to control dimming and lighting with greater precision also decreases or eliminates unwanted illumination from a bright object or zone bleeding into a darker adjacent object, referred to as "blooming" or "haloing."

3. This capability is called Full Array Local Dimming. It is the paramount innovation in Mini LED technology, and it is the reason consumers and the industry alike understand the label "Mini LED" to mean a television with FALD.

4. Samsung understands this. On its own website explaining "What is Mini LED," Samsung tells consumers that "Mini LED is an advanced backlighting display technology that uses tiny LEDs, smaller than standard ones, for more precise backlight control through local dimming zones—a technique where backlight zones are controlled independently," which "helps achieve better image quality, high contrast and enhanced picture quality." Samsung further tells consumers that Mini LED "provides better

contrast ratios due to its ability to control local dimming zones more precisely," resulting in "deeper blacks."[1]

5. Notwithstanding this understanding, Samsung labeled and sold its M Models as "Mini LED" televisions even though the M Models contain none of the technological advancements that define Mini LED. The M Models do not contain: (i) LEDs considered to be "mini" sized in the industry; (ii) any local dimming zones; (iii) the wiring and circuitry required for local dimming zones; or (iv) any LED control board capable of achieving local dimming. The LEDs in the M Models are 0.5 mm—significantly larger than the 0.1-to-0.3 mm size understood in the industry to be "mini." There are only a few dozen of them, positioned in two parallel horizontal lines rather than arranged over the entire surface area of the back panel, and they are wired in series so that they are all controlled, dimmed, and brightened as a single group. The M Models are, in every technological respect that matters, identical to Samsung's entry-level Crystal UHD standard-LED televisions—which Samsung has never marketed as "Mini LED."

6. Samsung compounded its deception through misleading marketing terminology. Samsung's specification sheets describe the M Models' dimming feature as "Supreme Mini LED Dimming"[2]—the very same term Samsung uses for its genuine, higher-priced Neo QLED televisions that actually contain Mini LED technology and FALD.[3]

7. Only in a footnote, printed so small it cannot be read without magnification, does Samsung disclose that the M Models' "Supreme Mini LED Dimming is Software-based (not full-array hardware-based) technology."[4] Samsung also advertises that the M Models contain a "Mini LED Processor." However, discovery will show that the "Mini LED Processor" is the identical chip Samsung

---

[1] *Mini LED vs. QLED*, SAMSUNG, https://www.samsung.com/us/tvs/tv-buying-guide/mini-led-vs-qled/, archived at perma.cc/N9LJ-ALP3 (last visited Nov. 12, 2026).

[2] *See, e.g.*, *43 Inch Class Mini LED M70H*, https://www.samsung.com/us/tvs/mini-led-tv/43-inch-mini-led-4k-tv-m70h-sku-un43m70hafxza/, archived at perma.cc/WYL5-EMRX (last visited Nov. 13, 2026).

[3] NEO QLED QN80H 4K SAMSUNG VISION AI SMART TV (2026), https://images.samsung.com/is/content/samsung/assets/au/offer/tnc/QN80H_2026_Retailer_Spec_Sheet_10032026.pdf, archived at perma.cc/2J62-C979 (last visited Nov. 16, 2026).

[4] *See, e.g.*, SAMSUNG MINI LED M80H SPEC SHEET, https://images.samsung.com/is/content/samsung/p6pim/us/un75m80hafxza/specsheet/us-specsheet-un75m80hafxza-551528813.pdf, archived at perma.cc/Z7HK-6TN6 (last visited Nov. 16, 2026).

calls a "Crystal UHD Processor" in its Crystal UHD televisions.

8. Consumers cannot verify these representations. Whether Neo QLED, "mini" LED, or Crystal UHD, the LED components in Samsung's televisions are sealed units; a purchaser cannot open and inspect the television to see what backlighting technology a set actually uses. Moreover, a substantial share of televisions is purchased online, where the buyer never sees the screen in operation before purchase. Consumers are therefore dependent on the truthfulness of the manufacturer's representations. Samsung exploited that dependence.

9. Samsung has been aware that its M Models are not Mini LED televisions. Its own website explains what Mini LED means,[5] yet independent reviewers have documented that the M Models "lack local dimming entirely."[6]

10. Notwithstanding its knowledge, Samsung continues to advertise the M Models as "Mini LED" televisions in order to charge consumers a premium for technology the televisions do not contain.

11. As a result of Samsung's unfair, deceptive, and fraudulent business practices, purchasers of Samsung's M Models, including Plaintiff, have suffered ascertainable losses. Had Plaintiff and other Class Members known that the M Models were not Mini LED televisions and did not contain FALD, they would not have purchased them, or would have paid substantially less for them. Plaintiff and Class Members paid a premium for technology the televisions did not contain and did not receive the benefit of their bargain.

12. Accordingly, Plaintiff brings this action to redress Samsung's violations of California's Consumers Legal Remedies Act, Unfair Competition Law, and False Advertising Law, and for fraud, negligent misrepresentation, and unjust enrichment.

## PARTIES

### A. Plaintiff

13. Plaintiff John Forrett is a resident and citizen of the State of California who resides in San Jose, California. On or about August 21, 2026, Plaintiff John Forrett purchased a new Samsung M80H

---

[5] *Mini LED vs. QLED*, *supra* note 1.
[6] *E.g.*, Samuel Breton, Adam Babcock & Yannick Khong, *Samsung M70H TV Review*, RTINGS.COM (June 18, 2026), https://www.rtings.com/tv/reviews/samsung/m70h, archived at perma.cc/XEP6-FPWT (last visited Nov. 16, 2026).

television for personal use from Costco for approximately $1,199.99.

**B. Defendant**

14. Defendant Samsung Electronics America, Inc. is, on information and belief, a New York corporation with its principal place of business in Plano, Texas. Samsung markets, sells, and distributes its televisions, including the M Models, throughout the United States, including in California and in this District.

## JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 putative Class Members; and at least one putative Class Member is a citizen of a state different from Samsung.

16. This Court has personal jurisdiction over Samsung because it conducts substantial business in this District, has sufficient minimum contacts with California, and a substantial part of the acts and omissions complained of occurred in this District. Samsung advertises, markets, sells, and distributes its M Model televisions in California and in this District.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), and California Civil Code § 1780(c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, Samsung is authorized to conduct business in this District, it has availed itself of the laws and markets of this District, and it is subject to personal jurisdiction in this District.

18. Plaintiff's declaration of venue required pursuant to California Civil Code section 1780(d) is attached hereto as Exhibit A.

## INTRADISTRICT ASSIGNMENT

19. Pursuant to Civil Local Rules 3-2(c) and 3-2(d), assignment of this action to the San Jose Division is proper because a substantial part of the events or omissions giving rise to Plaintiff John Forrett's claims occurred in Santa Clara County.

## GENERAL ALLEGATIONS

### A. Samsung and the Television Market

20. Samsung markets and sells televisions throughout the United States through numerous retailers, both at brick-and-mortar stores and online, including Amazon, Best Buy, Costco, Walmart, Sam's Club, and Target, as well as directly to consumers through Samsung.com.

21. Samsung is one of the largest sellers of televisions in the United States and the world.[7] Televisions are a product in high demand, sold at a range of prices for substantial profit.

22. The television market is highly competitive and changes frequently. Consumer demand is affected by the technical specifications of televisions, including the display and backlighting technology. To remain competitive and stimulate demand, Samsung must advertise attractive technical specifications at competitive prices.

23. Competition in the television market is based on providing increased picture quality through advancements in technology, at competitive prices. A substantial share of televisions is sold online, by purchasers who cannot see the television screen in operation and must rely solely on the manufacturer's written representations. Moreover, because televisions' LED systems are contained in sealed units whose internal technology cannot be inspected by the buyer, consumers heavily, if not entirely, rely on the manufacturer's representations about the LED technology. For this reason, the truthfulness of a manufacturer's representations is critical to consumers' purchasing decisions.

### B. Mini LED and Full Array Local Dimming: A Primer

24. Today's standard television is a Light-Emitting Diode ("LED") television, which uses a Liquid-Crystal Display ("LCD") panel illuminated by LED backlights. The LEDs emit light; the LCD panel, divided into millions of pixels, transmits or blocks that light to form the image.

25. In some LED televisions, picture quality is adjusted by dimming or brightening the backlights. In early LED televisions, these adjustments uniformly affected the entire screen—dimming

---

[7] *See Samsung Electronics Marks 20 Consecutive Years as the World's No.1 TV Brand*, SAMSUNG NEWSROOM U.S. (Mar. 9, 2026), https://news.samsung.com/us/samsung-electronics-marks-20-consecutive-years-as-the-worlds-no-1-tv-brand/, archived at perma.cc/E8L8-54PD (last visited Nov. 12, 2026).

dark areas would also dim bright areas. This, in turn, yielded low contrast and a low dynamic range (the difference between the darkest blacks and brightest whites).

26. To improve these picture quality issues, manufacturers began grouping LEDs into independently controlled zones that could be dimmed independently, i.e., "local dimming." The size of these conventional LEDs, however, only allowed for a few dozen zones—too few to meaningfully improve dynamic range or contrast. In addition, these early local dimming zones often suffered from "blooming" or "haloing," where unwanted illumination from bright areas is seen on adjacent dark areas.

27. Smaller LEDs known as "mini" LEDs advanced this technology significantly. Mini LEDs typically measure 100 to 300 microns (versus a traditional LED measuring approximately 1,000 microns), thus enabling a single television to use hundreds or thousands of mini LEDs as opposed to tens of standard LEDs. More LEDs facilitate a much greater number of independently controllable dimming zones. This ability to array hundreds to thousands of mini LEDs spread over the entire back of a television (e.g., a full array), controlled individually or in zones to control picture quality, is called Full Array Local Dimming ("FALD"). FALD significantly advanced overall picture quality with greater dynamic range and contrast, improved black and brightness levels, and reduced or eliminated the blooming and haloing problems of the initial local dimming technology.

28. Local dimming was ineffective before the introduction of mini LEDs, and the only reason to use mini LEDs in a television backlight is to provide more effective local dimming. Thus, in the television industry and marketplace, the term "Mini LED" is understood to necessarily include FALD—the paramount advancement of mini LED technology of benefit to the product and the consumer.

29. The industry uniformly defines and promotes Mini LED televisions as containing FALD.[8] Industry competitors explicitly highlight local dimming technology in advertising for their Mini LED

---

[8] *See, e.g.*, Scharon Harding, *TCL is right to question Samsung's use of the term "Mini LED,"* ARS TECHNICA (Oct. 26, 2026), https://arstechnica.com/gadgets/2026/10/tcl-is-right-to-question-samsungs-use-of-the-term-mini-led/, archived at perma.cc/4233-QVQ6 (last visited Nov. 16, 2026) ("I think that [it] is broadly agreed across the industry that FALD is a key and mandatory feature in Mini LED backlights.") (internal quotation marks omitted); James K. Willcox, *Why Your Next TV May Have Mini LEDs*, CONSUMER REPORTS (Aug. 2, 2026), https://www.consumerreports.org/electronics-computers/tvs/why-your-next-tv-may-have-mini-leds-a7407663850/, archived at perma.cc/XAM5-FF7H (last visited Nov. 16, 2026) ("Mini LEDs in the backlight take local dimming to a whole new level . . . Because the LEDs are so small, there can be a lot of dimming zones—say, a thousand—instead of the dozens typically found in even the best LCD sets without Mini LEDs.").

televisions,[9] and independent reviewers consistently evaluate Mini LED televisions based on their local dimming capabilities.[10]

30. The superior picture quality associated with the "Mini LED" label requires components not found in ordinary LED televisions, namely: actual mini LEDs (typically under 300 microns); hundreds to thousands of independently controlled dimming zones; and highly complex circuitry to individually sustain and orchestrate those LEDs. A television that lacks these components—and, in particular, that lacks FALD—is not a Mini LED television; it is an ordinary LED television.

**C. Samsung's M Models Are Not Mini LED Televisions**

31. Samsung introduced its first genuine Mini LED televisions in 2021 under its "Neo QLED" line, starting at around $1,100.

32. In or about March 2026, Samsung introduced a separate line of televisions labeled simply "Mini LED"—the M Models, consisting of the M70H, M80H, and M90H. Samsung priced the M Models substantially below competing genuine Mini LED televisions.

33. The M Models are not Mini LED televisions in any sense. Rather than develop a lower-priced genuine Mini LED television, Samsung took its existing entry-level Crystal UHD standard-LED television—the most basic tier in Samsung's own product hierarchy, which Samsung has never marketed as "Mini LED"—and relabeled it "Mini LED." The M Models are materially identical to the Crystal

---

[9] *E.g.*, *Enjoy exceptional contrast with XR Processor on Mini LED & Full Array LED*, SONY, https://electronics.sony.com/fullarrayled-tv, archived at perma.cc/BER4-PMUW (last visited Nov. 16, 2026) ("Our unique XR Backlight Master Drive technology uses a Sony-developed local dimming algorithm to control thousands of tiny, high-density LEDs with absolute precision and independence.").

[10] *See, e.g.*, Jacob Falato Rodrigues, Ben Trudeau & John Peroramas, *Hisense UR8SG TV Review*, RTINGS.COM (updated Nov. 10, 2026), https://www.rtings.com/tv/reviews/hisense/ur8sg, archived at perma.cc/878Q-BJQ9 (last visited Nov. 16, 2026); Jacob Falato Rodrigues, Adam Babcock & John Peroramas, *Vizio Mini LED Quantum 4K TV Review*, RTINGS.COM (updated Nov. 11, 2026), https://www.rtings.com/tv/reviews/vizio/mini-led-quantum-4k, archived at perma.cc/8P69-KEVT (last visited Nov. 16, 2026); Jacob Falato Rodrigues, Adam Babcock & John Peroramas, *LG QNED92A TV Review*, RTINGS.COM (updated Nov. 10, 2026), https://www.rtings.com/tv/reviews/lg/qned92a, archived at perma.cc/YXQ3-9XJH (last visited Nov. 16, 2026); Anne Corning, *How to test the coming wave of miniLED displays*, CONSUMER ELECTRONICS TEST & DEVELOPMENT (Nov. 16, 2022), https://www.consumerelectronicstestdevelopment.com/content/in-depth/how-to-test-the-coming-wave-of-miniled-displays, archived at perma.cc/ZY9W-4U3F (last visited Nov. 16, 2026).

UHD televisions on which they are based.[11] The backs of the two televisions are identical, as well as their power boards, control boards, wiring, and surrounding structures.

34. Samsung's entry level crystal UHD standard-LED televisions range from $199.99 (43")[12] to $1,399.99 (98"),[13] which are materially equivalent to the more expensive M Models, ranging from $249.99 (43" M70H)[14] to $1,799.99 (100" M90H).[15] Competitors' genuine Mini LED televisions range from $249.99 (43")[16] to $2,999.99 ("100").[17]

35. The M Models fail every technological hallmark of a Mini LED television:

a. Size: As used and understood in the industry, the term "mini" LED means 100 to 300 microns (0.1-to-0.3 mm) in size. The LEDs in the M Models are 500 microns (0.5 mm).

b. Number and arrangement: True Mini LED televisions have thousands of mini LEDs arrayed across the television's entire back panel. The M Models have only a few dozen LEDs arranged on two aluminum strips in a layout identical to the Crystal UHD.

c. Insufficient control capacity and circuitry for local dimming. Powering and orchestrating thousands of mini LEDs and their local dimming zones require highly complex circuitry, power and control boards, and control chips. The M Models contain no such LED control

---

[11] *Compare* Samsung Repair Guide, UN65M70HAFXZC / UNXXM70HXXXXX (Ver. 1.0), https://shorturl.at/c5Zri, archived at perma.cc/ZMN4-DR3D (last visited Nov. 12, 2026), *with* Samsung Repair Guide, UN55U8000HFXZC / UNXXU8000HXXXX (Ver. 1.0), https://shorturl.at/8uguY, archived at perma.cc/4NE5-GVHE (last visited Nov. 12, 2026) (teardown documentation reflecting identical back panels, power and control boards, wiring, reflector films, LED housings, and processors between the Crystal UHD and M Model televisions).

[12] *43 Inch Class Crystal UHD U8000H*, https://www.samsung.com/us/tvs/uhd-4k-tv/43-inch-crystal-uhd-4k-tv-u8000h-sku-un43u8000hfxza/, archived at perma.cc/S37R-X6NW (last visited Nov. 12, 2026).

[13] *98 Inch Class Crystal UHD U9000H*, https://www.samsung.com/us/tvs/uhd-4k-tv/98-inch-crystal-uhd-4k-tv-u9000h-sku-un98u9000hfxza/, archived at perma.cc/9GZM-Y3W8 (last visited Nov. 12, 2026).

[14] *43 Inch Class Mini LED M70H*, https://www.samsung.com/us/tvs/mini-led-tv/43-inch-mini-led-4k-tv-m70h-sku-un43m70hafxza/, archived at perma.cc/YS8A-NW8V (last visited Nov. 12, 2026).

[15] *100 Inch Class Mini LED M90H*, https://www.samsung.com/us/tvs/mini-led-tv/100-inch-mini-led-4k-tv-m90h-sku-un100m90hfxza/, archived at perma.cc/T7B9-DWN4 (last visited Nov. 12, 2026).

[16] *43 Inch Class LG QNED AI QNED74B Mini LED*, https://www.lg.com/us/tvs/lg-43qned74bua-qned-4k-tv, archived at perma.cc/XXL4-3TPZ (last visited Nov. 12, 2026).

[17] *100 Inch Class LG QNED evo AI Mini LED QNED84B*, https://www.lg.com/us/tvs/lg-100qned84bu-qned-4k-tv, archived at perma.cc/58WE-38YV (last visited Nov. 12, 2026).

chip or control circuitry Discovery will show that the processor in the M Models is the same processor found in the Crystal UHD models.

d. Wiring: Each M Model's LED is wired in series so that all of the LEDs are controlled, dimmed, and brightened in a single group.

36. In short, the M Models do not contain (i) actual mini LEDs, (ii) the number and arrangement of LEDs necessary for local dimming zones in true mini LED televisions, (iii) the advanced LED control board and circuitry required for local dimming zones, or (iv) wiring capable of providing local dimming. They are rebranded Crystal UHD standard-LED televisions.

**D. Samsung's False and Misleading Marketing of the M Models**

37. Samsung markets, promotes, and sells the M Models as "Mini LED" televisions through numerous channels of commercial advertising, including product packaging, product labels, point-of-sale and retailer displays, product specification sheets, online product pages, and other promotional materials.

38. Samsung's own website confirms that Samsung understands—and represents to consumers—that a "Mini LED" television contains local dimming and FALD. Under "What is Mini LED," Samsung states that "Mini LED is an advanced backlighting display technology that uses tiny LEDs, smaller than standard ones, for more precise backlight control through local dimming zones—a technique where backlight zones are controlled independently," which "helps achieve better image quality, high contrast and enhanced picture quality, especially noticeable with HDR content." In response to "Which TV offers better contrast, Mini LED or QLED?", Samsung states that "Mini LED technology . . . provides better contrast ratios due to its ability to control local dimming zones more precisely," resulting in "deeper blacks."[18]

39. Having told consumers what "Mini LED" means, Samsung nonetheless labels and sells the M Models as "Mini LED" even though the M Models contain no mini LEDs and no local dimming.

40. Samsung's use of the term "Supreme Mini LED Dimming" for the M Models[19] further deceives consumers. Samsung applies the identical "Supreme Mini LED Dimming" label to its higher-

---

[18] *Mini LED vs. QLED*, *supra* note 1.

[19] *E.g.*, *43 Inch Class Mini LED M70H*, *supra* note 2.

priced Neo QLED televisions that actually contain true Mini LED technology and FALD[20]—suggesting to consumers that the M Models offer the same or superior dimming technology. On the M Models, Samsung discloses the truth only in a footnote so small it cannot be read without magnification: that "Supreme Mini LED Dimming is Software-based (not full-array hardware-based) technology."[21] On its genuine Neo QLED televisions, Samsung includes no such disclaimer.

41. Samsung also advertises that the M Models contain a "Mini LED Processor." However, discovery will show that the processor in the M Models is the identical processor Samsung describes as a "Crystal UHD Processor" in its Crystal UHD televisions.

42. Samsung's representations that the M Models are "Mini LED" televisions with "Supreme Mini LED Dimming" and a "Mini LED Processor" are false and misleading. The M Models do not possess the technological characteristics, performance capabilities, or functionality that consumers reasonably understand to be associated with genuine "Mini LED" televisions.

**E. Samsung's False Advertising Deceives Consumers**

43. Samsung's false and misleading representations are material. Contrast ratio, dynamic range, and picture quality influence consumers' television purchasing decisions, and consumers reasonably interpret a "Mini LED" label—and Samsung's "Supreme Mini LED Dimming" representation—to mean the television has local dimming that produces more vivid picture quality superior to televisions without Mini LED technology.

44. Consumers are, in fact, deceived and confused by Samsung's representations. Purchasers have publicly questioned why their M Model televisions lack the features associated with Mini LED.[22] One purchaser of a Samsung 55M70H, marketed as a "Mini LED" TV, reported seeing no difference from an ordinary LED television, no deeper blacks, and no improved HDR effect, and asked whether the

---

[20] NEO QLED QN80H 4K SAMSUNG VISION AI SMART TV (2026), *supra* note 3.

[21] SAMSUNG MINI LED M80H SPEC SHEET, *supra* note 4.

[22] *See e.g.*, @SashaOz, SAMSUNG COMMUNITY (May 13, 2026), https://eu.community.samsung.com/t5/tv/how-is-the-mini-led-m80h-lit/td-p/14682399, archived at perma.cc/7PKC-YPFK (last visited Nov. 12, 2026); u/Kismta1985, REDDIT (r/hometheater), *Is the Samsung M80H still MiniLED if it has no local dimming?* (2026), https://www.reddit.com/r/hometheater/comments/1txipja/, archived at perma.cc/LC93-WE59 (last visited Nov. 12, 2026).

model was "missing the features that people usually associate with Mini LED (like local dimming)."[23] Another described the M80H as "a Direct LED with no local dimming, but 'software dimming'" that is "marketed to trick consumers that don't know any better."[24] Independent testing of the M80H reflects that there is no localized dimming or dimming zones.[25]

45. Because televisions are closed systems and because whether a television actually contains mini LEDs and local dimming cannot be readily verified by a consumer—particularly before purchase—consumers had no reasonable way to discover the Mini LED Deficiency and reasonably relied on Samsung's representations.

46. Furthermore, the closed-system nature of the M Model televisions and the inability for consumers—lay people, not technical experts—to ascertain whether or not the televisions contain mini LED features and FALD places this material information regarding the Mini LED Deficiency squarely within Samsung's exclusive and superior knowledge.

47. Samsung advertised the M Models as "Mini LED" in order to charge a premium for technology the televisions do not contain. Had Samsung truthfully disclosed that the M Models are not Mini LED televisions and do not contain FALD, Plaintiff and Class Members would not have purchased them, or would have paid substantially less for them. Plaintiff and Class Members paid a premium and did not receive the benefit of their bargain.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**Plaintiff John Forrett**

48. Plaintiff John Forrett purchased a new Samsung M80H television on or about August 21, 2026 from Costco for approximately $1,199.99.

49. For the specific model Plaintiff Forrett purchased, Samsung advertised and marketed the

---

[23] u/Firm-Inspector-3298, REDDIT (r/4kTV), *Bought a Samsung 55M70H for "Mini LED" TV... but I don't see any difference.* (2026), https://www.reddit.com/r/4kTV/comments/1sj32oi/, archived at perma.cc/ECU6-REZN (last visited Nov. 12, 2026).

[24] u/Nickool4, REDDIT (r/4kTV), *Is my Samsung TV faulty?* (2026), https://www.reddit.com/r/4kTV/comments/1ty8xsc/is_my_samsung_tv_faulty/, archived at perma.cc/9CFJ-WVMU (last visited Nov. 12, 2026).

[25] Samuel Breton, Adam Babcock & John Peroramas, *Samsung M80H TV Review,* RTINGS.COM (June 3, 2026), https://www.rtings.com/tv/reviews/samsung/m80h, archived at perma.cc/Y66F-HX5B (last visited Nov. 12, 2026).

television as a "Mini LED" television, including through representations regarding "Supreme Mini LED Dimming" and a "Mini LED Processor."

50. Before purchasing the television, Plaintiff Forrett reviewed Samsung's advertising representing that the television was a "Mini LED" television and compared it to other televisions at similar price points. Plaintiff Forrett is a loyal Samsung customer and previously purchased a Samsung Q80B QLED television. A primary reason Plaintiff Forrett purchased the M80H television was that it was advertised as a Mini LED television, which Plaintiff understood to provide better picture quality than a standard LED television. Plaintiff believed the M80H television would be an upgrade from the Q80B television he already owned in part due to the advertised Mini LED feature.

51. None of the information provided to Plaintiff Forrett disclosed that his Model M television suffered from the Mini LED Deficiency and did not contain FALD.

52. As a result of Samsung's false and misleading representations, Plaintiff Forrett paid more for the television than he otherwise would have paid had the television not been advertised as a Mini LED television. Had Samsung truthfully disclosed that the M80H television was not a Mini LED television and did not contain FALD, Plaintiff Forrett would not have purchased it, or would have paid substantially less for it.

53. If Samsung's M Model televisions contained genuine Mini LED technology as advertised, or if the Court were to enjoin Samsung to comply with advertising and consumer-protection laws, Plaintiff Forrett would likely continue to purchase Samsung televisions in the future. At present, however, Plaintiff cannot be confident that Samsung's "Mini LED" representations are accurate.

## CLASS ALLEGATIONS

54. Plaintiff brings this action as a class action on behalf of himself and all others similarly situated pursuant to Federal Rule of Civil Procedure 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

55. Plaintiff seeks to represent the following Class:

> All individuals who purchased a Samsung M70H, M80H, or M90H model television that was marketed as a "Mini LED" television in the State of California between March 2026 to the present.

56. Plaintiff seeks certification of the Class for all causes of action. Plaintiff reserves the right to modify the Class definition or add subclasses as necessary prior to moving for class certification.

57. Excluded from the Class are Samsung; any affiliate, parent, or subsidiary of Samsung; any entity in which Samsung has a controlling interest; any officer, director, or employee of Samsung; any successor or assign of Samsung; anyone employed by counsel in this action; and any judge to whom this case is assigned, together with his or her spouse, immediate family members, and staff.

58. **Numerosity/Ascertainability.** The members of the Class are so numerous that joinder of all members would be impracticable. The exact number of Class Members is presently unknown, but it is estimated that there are more than one thousand (1,000) members. The identity of Class Members is readily ascertainable from Samsung's records and the records of its retailers.

59. **Common Questions of Law and Fact Predominate.** There are common questions of law and fact as to Plaintiff and all Class Members that predominate over questions affecting only individual members, including, without limitation:

a. Whether Samsung's M Model televisions contain Mini LED technology, including FALD, as advertised;

b. Whether Samsung's statements and representations that the M Models are "Mini LED" televisions are false or misleading;

c. Whether Samsung knew or should have known that the M Models did not contain Mini LED technology, including FALD;

d. Whether Samsung engaged in unfair, unconscionable, or deceptive trade practices by marketing and selling the M Models as "Mini LED" televisions;

e. Whether Samsung engaged in false or misleading advertising by labeling, packaging, marketing, and selling the M Models as "Mini LED" televisions;

f. Whether Samsung violated the CLRA, the UCL, and the FAL;

g. Whether Samsung has been unjustly enriched;

h. Whether Plaintiff and Class Members paid a premium they would not have paid, or would not have purchased the televisions at all, but for Samsung's misrepresentations;

i. Whether Plaintiff and Class Members were injured by Samsung's conduct and the proper

measure of their losses; and

j. Whether Plaintiff and Class Members are entitled to damages, restitution, disgorgement, and injunctive, declaratory, or other equitable relief.

60. **Typicality.** Plaintiff's claims are typical of the claims of the Class. Like every Class Member, Plaintiff purchased a Samsung M Model television that Samsung advertised and sold at a premium as a "Mini LED" television, which in reality it is not.

61. **Adequacy of Representation.** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class, and he has retained counsel experienced in prosecuting class actions and consumer-fraud litigation who are committed to vigorously prosecuting this action.

62. **Predominance and Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation, and it would be impracticable for Class Members to seek individual redress for Samsung's conduct. Class treatment will conserve the resources of the courts and the parties and promote consistency and efficiency of adjudication. Samsung has acted, and refused to act, on grounds generally applicable to the Class, making final injunctive and corresponding declaratory relief appropriate as to the Class as a whole.

63. Samsung's misrepresentations regarding the M Models were made in a uniform manner to all purchasers, including Plaintiff and Class Members, and had a uniform effect. Plaintiff knows of no difficulty that would preclude maintenance of this action as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA"), CAL. CIV. CODE §§ 1750, ET SEQ.

(*On behalf of Plaintiff and the Proposed Class*)

64. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

65. The Samsung televisions at issue are "goods" as defined in Cal. Civ. Code § 1761(a).

66. Samsung is a "person" as defined in Cal. Civ. Code § 1761(c).

67. Plaintiff and Class Members are "consumers" as defined in Cal. Civ. Code § 1761(d), who engaged in "transactions" as defined in Cal. Civ. Code § 1761(e).

68. Samsung engaged in unfair and deceptive acts and practices in violation of the CLRA by advertising, marketing, and selling the M Models as "Mini LED" televisions. Samsung's conduct violates, at a minimum, Cal. Civ. Code § 1770(a)(5) (representing that goods have characteristics, uses, or benefits that they do not have); § 1770(a)(7) (representing that goods are of a particular standard, quality, or grade when they are not); and § 1770(a)(9) (advertising goods with intent not to sell them as advertised).

69. Throughout the relevant period, Samsung knew or reasonably should have known that the M Models, which it advertised as "Mini LED" televisions, were not Mini LED televisions and did not contain FALD.

70. Samsung intended that Plaintiff and Class Members would rely on its misrepresentations concerning the M Models in deciding to purchase them.

71. Plaintiff and Class Members considered whether the televisions were genuine Mini LED televisions to be material to their purchasing decisions. The technology in a television that directly affects its display and performance is material to the reasonable consumer.

72. Had Samsung disclosed the true nature of the M Models, Plaintiff and Class Members would have acted differently: they would not have purchased the televisions, or would have paid substantially less for them. Plaintiff's and Class Members' injuries were proximately caused by Samsung's deceptive practices.

73. As a direct and proximate result of Samsung's violations of the CLRA, Plaintiff and Class Members have suffered ascertainable loss of money and property.

74. In accordance with Cal. Civ. Code § 1782(a), Plaintiff's counsel notified Samsung in writing, by certified mail, of Samsung's violations of § 1770 and demanded that Samsung correct, repair, replace, or otherwise rectify the goods and practices at issue. If Samsung fails to provide an appropriate remedy within 30 days, Plaintiff will seek CLRA damages by amendment; at present Plaintiff seeks injunctive and declaratory relief under the CLRA.

75. Pursuant to Cal. Civ. Code § 1780, Plaintiff seeks an order enjoining Samsung from the

unlawful practices described above, a declaration that Samsung's conduct violates the CLRA, and, as permitted, actual damages, punitive damages, restitution, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, ET SEQ.**
(*On behalf of Plaintiff and the Proposed Class*)

76. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

77. The UCL prohibits any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

78. Samsung violated the unlawful prong of the UCL through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, and the CLRA, Cal. Civ. Code §§ 1750, et seq., as alleged herein.

79. Samsung violated the fraudulent prong of the UCL because its representations that the M Models are "Mini LED" televisions—with "Supreme Mini LED Dimming" and a "Mini LED Processor"—are likely to deceive, and did deceive, reasonable consumers, including Plaintiff and Class Members.

80. Samsung violated the unfair prong of the UCL because its conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The harm to consumers greatly outweighs any countervailing benefit, and Plaintiff and Class Members could not reasonably have avoided the injury.

81. Throughout the relevant period, Samsung knew or reasonably should have known that the M Models were not Mini LED televisions and did not contain FALD.

82. As a direct and proximate result of Samsung's violations of the UCL, Plaintiff and Class Members suffered injury in fact and lost money or property: they paid a premium for televisions that lacked the advertised technology and did not receive the benefit of their bargain.

83. Pursuant to Cal. Bus. & Prof. Code §§ 17203 and 17204, Plaintiff and Class Members seek to enjoin Samsung's unlawful, unfair, and fraudulent practices and to obtain restitution and restitutionary disgorgement of all monies Samsung acquired through those practices, together with all other relief permitted under the UCL.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW ("FAL"), CAL. BUS. & PROF. CODE §§ 17500, ET SEQ.**
(*On Behalf of the California Class*)

84. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

85. The FAL makes it unlawful for any corporation, with intent to dispose of personal property, to disseminate before the public any statement concerning that property that is untrue or misleading, and that is known, or by the exercise of reasonable care should be known, to be untrue or misleading. Cal. Bus. & Prof. Code § 17500.

86. Samsung disseminated throughout California, through its advertising, marketing, packaging, and labeling of the M Models, statements that were untrue or misleading—namely, that the M Models are "Mini LED" televisions with "Supreme Mini LED Dimming" and a "Mini LED Processor"—and that Samsung knew, or by the exercise of reasonable care should have known, to be untrue or misleading.

87. Samsung's misrepresentations were material and likely to deceive a reasonable consumer.

88. Plaintiff and Class Members reasonably relied on Samsung's misrepresentations and, as a direct and proximate result, suffered injury in fact and lost money or property. Had Samsung truthfully disclosed the true nature of the M Models, Plaintiff and Class Members would not have purchased them, or would have paid substantially less.

89. Plaintiff and Class Members seek to enjoin Samsung's deceptive conduct and to obtain restitution and restitutionary disgorgement of all monies Samsung acquired through its deceptive conduct, and all other relief permitted under Cal. Bus. & Prof. Code § 17500.

**FOURTH CAUSE OF ACTION**
**FRAUD**
(*On Behalf of the California Class*)

90. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

91. Samsung represented to consumers, including Plaintiff and Class Members, that the M

Models are "Mini LED" televisions, with "Supreme Mini LED Dimming" and a "Mini LED Processor." These representations were false: the M Models are not Mini LED televisions and do not contain FALD.

92. Samsung knew that its representations were false, or made them recklessly without regard for their truth, and made them with the intent to induce consumers to purchase the M Models.

93. Plaintiff and Class Members reasonably and justifiably relied on Samsung's misrepresentations in purchasing the M Models.

94. As a direct and proximate result of Samsung's fraud, Plaintiff and Class Members were damaged in an amount to be determined at trial. Samsung's conduct was undertaken with oppression, fraud, or malice, entitling Plaintiff and Class Members to punitive damages.

## FIFTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION
(*On Behalf of the California Class*)

95. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

96. Samsung had a duty to provide honest and accurate information to consumers so that they could make informed purchasing decisions.

97. Samsung represented that the M Models are "Mini LED" televisions with "Supreme Mini LED Dimming" and a "Mini LED Processor." Those representations were untrue, and Samsung had no reasonable ground for believing them to be true when it made them.

98. Samsung intended that consumers, including Plaintiff and Class Members, would rely on its representations. Plaintiff and Class Members reasonably relied on Samsung's representations in purchasing the M Models.

99. As a direct and proximate result of Samsung's negligent misrepresentations, Plaintiff and Class Members were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## UNJUST ENRICHMENT
(*On Behalf of the California Class*)

100. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

101. Plaintiff and Class Members conferred a benefit on Samsung by purchasing the M Models, and Samsung knowingly accepted and retained that benefit.

102. Samsung's misrepresentations and omissions allowed it to sell the M Models at a premium price exceeding their true value, while avoiding the cost of manufacturing genuine Mini LED televisions. In turn, Plaintiff and Class Members paid these higher prices for their M Models to Samsung's authorized distributors and dealers, allowing Samsung to thereby obtain money that, in equity and good conscience, belongs to Plaintiff and Class Members.

103. Had Samsung truthfully represented the true nature of the M Models, Plaintiff and Class Members would not have purchased them, or would have paid substantially less.

104. Samsung knowingly accepted the benefits of its unjust conduct.

105. As a result of the Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

106. It would be inequitable and unjust for Samsung to retain the benefit it obtained through its wrongful conduct. Plaintiff and Class Members are entitled to non-restitutionary disgorgement of all profits Samsung obtained from the sale of the M Models.

## NO ADEQUATE REMEDY AT LAW

107. Plaintiff and Class Members lack an adequate remedy at law to fully address Samsung's unfair and deceptive conduct. Legal remedies are not equally prompt, certain, or efficient as equitable relief, and the standards governing restitution differ from those governing damages, such that the Court may award restitution even where damages are unavailable or uncertain. In addition, absent injunctive relief, Plaintiff and Class Members face a threat of future harm because they cannot be confident that Samsung's "Mini LED" representations are accurate, and would consider purchasing Samsung televisions in the future if Samsung's advertising were truthful. Equitable relief is therefore appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, pray for judgment and relief against Samsung as follows:

a. Certification of this action as a class action, and appointment of Plaintiff as Class Representative and his counsel as Class Counsel;

b. A declaration that Samsung's conduct violates the CLRA, the UCL, and the FAL;

c. An order permanently enjoining Samsung from advertising, marketing, labeling, or selling the M Models as "Mini LED" televisions, and from otherwise engaging in the unlawful, unfair, and fraudulent acts and practices alleged herein, and requiring corrective advertising;

d. An award of all actual, general, special, incidental, statutory, and punitive damages to which Plaintiff and Class Members are entitled;

e. Restitution and disgorgement of all profits and unjust enrichment Samsung obtained as a result of its unlawful, unfair, and fraudulent conduct;

f. An award of reasonable attorneys' fees and costs, including under Cal. Civ. Code § 1780 and Cal. Code Civ. Proc. § 1021.5;

g. Pre-judgment and post-judgment interest on any monetary relief; and

h. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 17, 2026

By: */s/ Annick M. Persinger*

Annick M. Persinger (CA Bar No. 272996)
*apersinger@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950

Andrea R. Gold (*pro hac vice* forthcoming)
*agold@tzlegal.com*
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW
Suite 1010
Washington, DC 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950

Adam A. Edwards (*pro hac vice* forthcoming)
William A. Ladnier (CA Bar No. 330334)

Amey Park (*pro hac vice* forthcoming)
Virginia Ann Whitener (*pro hac vice* forthcoming)
Jenna Santero (*pro hac vice* forthcoming)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080
Fax: (865) 522-0049
aedwards@milberg.com
wladnier@milberg.com
apark@milberg.com
gwhitener@milberg.com
jsantero@milberg.com

*Attorneys for Plaintiff and the Putative Class*